# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## ROBERT T. MASON v. COMMONWEALTH.

June 12, 1930.

Absent, Campbell and Epes, JJ.

The opinion states the case.

*E. Morris Abernathy* and *A. S. Harrison, Jr.*, for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

Robert T. Mason was indicted for an attempt to murder one J. B. Clark, a constable, of Brunswick county. The jury found him guilty and fixed his punishment at confinement in the penitentiary for a period of two years. The trial court entered judgment on the verdict.

To this judgment two assignments of error are urged.

First, that the verdict is contrary to the law and the evidence. The facts as disclosed by the records are as follows:

On Sunday morning, June 2, 1929, J. B. Clark and his son, Elmo Clark, were looking for some automobile thieves, and while driving along the highway, near Grundy, saw several cars parked in an old road. They stopped to investigate, and a little distance from the highway saw one white man and several negroes in the woods, engaged in a crap game. On the approach of the officers all of the parties, except one negro, ran; the white man in one direction and the negroes in another. Clark and his son pursued the negroes, but as they soon disappeared in the woods, the officers stopped.

Several shots came from the direction in which the negroes ran. The bullets from the pistol shots going pretty close to Clark, cutting leaves around him and some falling on him. Elmo Clark recognized Robert T. Mason as one of the negroes who left the crap game. Soon after this a negro named Rowlett was arrested, but later released. During the trial of Robert T. Mason, and on the cross-examination of J. B. Clark, the attorney for the accused brought out the fact that Rowlett had told Clark that Robert T. Mason had confessed to him, Rowlett, that he did the shooting, and had said he wished he had killed the "damn rascal." Whereupon the judge of the trial court warned counsel, for the accused, that he was introducing hearsay testimony, to which counsel replied: "I will take the consequences." At that time the counsel for the accused was laboring under mistaken belief that the Commonwealth would put Rowlett on the stand. The Commonwealth introduced another witness who stated that Robert T. Mason, about ten days after the shooting, said, as the two were approaching the scene of the crime: "Yes I shot. "The evidence introduced by the accused tended to show that he was not at the crap game and was not one of the parties who fled. While the evidence is not altogether satisfactory, there is a conflict and the jury has decided that conflict against the accused.

As was said by this court through Judge Kelly in the case of *Harris* v. *Commonwealth*, 129 Va. 751, 105 S. E. 541, 542: "Of this it is sufficient to say that we have carefully considered the record, and while the testimony is involved in conflict, and is not altogether satisfying as it appears in print, the evidence tending to support the theory of the Commonwealth was sufficient, if believed by the jury, to warrant the verdict. The question of the credibility of the witnesses and the

weight of the testimony was peculiarly for the jury, and we would not be warranted in interfering with their finding."

The only other error assigned, and not waived in the oral argument, is the refusal of the trial court to set the verdict aside and grant the accused a new trial on the ground of after-discovered evidence. The after-discovered evidence consists of statements claimed to have been made by one "Black Dad" Williamson to different parties on the afternoon of June 2, 1929, or some time in the day of June 3rd, to the effect that he had been in a crap game near Gum Grove on June 2nd when the game was raided and that he had shot up the raiders; that on the night of June 3rd he had borrowed $5.00 from his employer for the purpose of buying a pair of shoes, and had disappeared from the neighborhood; that he had clothes very much like those claimed to have been worn by the accused on the day the shooting took place, and that he owned a pistol.

It appears that the shooting occurred on the morning of June 2, 1929, and that the accused was tried on July 11, 1929, and that the parties to whom it is claimed that "Black Dad" Williamson made the admissions lived near the scene of the crime. The accused stated in his affidavit offered in support of his motion that he "could not by any amount of diligence; * * * * * or that of his attorney," have discovered the evidence before the trial. This statement is a mere conclusion not based on any facts set out in the record. The admissions of "Black Dad" Williamson contained in the supporting affidavit, coupled with circumstances pointing to its truth, might have been admissible testimony, if offered during the trial, under the doctrine laid down in the case of *Hines* v. *Commonwealth*, 136 Va. 728, 117 S. E. 843, 35 A. L. R. 431, so strongly

relied on in the appellant's brief.   No reason or excuse is offered by the accused to show why he did not obtain this evidence before the trial.

In *Hines* v. *Commonwealth, supra,* it was not even contended by the Commonwealth that Hines could have obtained the statement and confessions of Curtis before or during the trial, indeed it was shown that many of the statements were made either during or after the trial.

The rule governing the granting of a new trial for after-discovered evidence is well established by a long line of decisions of this court, and is concisely stated in the case of *Nicholas* v. *Commonwealth,* 91 Va. 741, 21 S. E. 364, 368, as follows:

"1st.   The evidence must have been discovered since the trial.   2nd. It must be evidence that could not have been discovered before the trial by the exercise of reasonable diligence.   3rd. It must be material in its object, and such as ought, on another trial, to produce an opposite result on the merits.   4th. It must not be merely cumulative, corroborative or collateral." 4 Min. Inst. Pt. 1, 758, 760; *Wynne* v. *Newman's Admr.,* 75 Va. 817; *Whitehurst* v. *Com.,* 79 Va. 556.   Other authorities are *Johnson's Case,* 104 Va. 881, 52 S. E. 625; *Taliaferro* v. *Shepherd,* 107 Va. 56, 57 S. E. 585; *Barsa* v. *Kator,* 121 Va. 290, 93 S. E. 613; *Johnson* v. *Commonwealth,* 126 Va. 770, 101 S. E. 341.

In the case of *McClung* v. *Folks,* 126 Va. 259, 101 S. E. 345, at page 347, it is stated: "The rule has been strictly adhered to that, however material may be the newly discovered evidence, a new trial will not be granted on that account unless such evidence could not have been discovered by the exercise of reasonable diligence in time for the court at the former trial."

What is reasonable diligence depends upon the facts and circumstances of each particular case; the

burden is on the mover to show to the court that he has exercised due or reasonable diligence to ascertain relevant facts before trial, and that such diligence did not reveal the existence of, nor show a probability of the existence of, the evidence now relied upon. The accused, Robert T. Mason, does not attempt to show what diligence he used or did not use to obtain this evidence before trial. See *Fenner* v. *Commonwealth*, 152 Va. 1014, 148 S. E. 821.

We are, therefore, of the opinion that the record discloses no reversible error.

*Affirmed.*